UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00103-BJB-HBB

ZURICH AMERICAN INSURANCE CO.,
FIRST SPECIALTY INSURANCE CORP.,
WIDOW JANE HOLDINGS, LLC, and
MEXCOR, INC.                                                                PLAINTIFFS

VS.

O'BRYAN CONTRACTING AND LEASING, INC.                    DEFENDANT

<u>MEMORANDUM OPINION
AND ORDER</u>

Before the court are two related motions filed by Plaintiffs Mexcor, Inc. ("Mexcor") and

Widow Jane Holdings, LLC ("Widow Jane") (DN 41, 42). The first is a Motion to Substitute

Insurers as the Real Plaintiffs in Interest (DN 41). The second is a Motion for Leave to File

Amended Complaint and to Join Additional Party Defendant (DN 42). Defendant O'Bryan

Contracting and Leasing, Inc. ("O'Bryan") has objected to both motions (DN 45). Mexcor and

Widow Jane have filed a reply in support of both motions (DN 49). The motions are ripe for

determination, and for the reasons that follow, the two motions are **GRANTED**.

<u>Nature of the Case</u>

In early 2017, Terressentia Corporation ("Terressentia") contracted with O'Bryan to

perform structural repairs to Rickhouse H at the distillery Terressentia operates as O.Z. Tyler at

10 Distillery Road in Owensboro, Kentucky ("Distillery") (DN 1-2 PageID # 7). Rickhouse H

was a five level (15 barrel-high) rack supported barrel-aging warehouse (<u>Id.</u>). Pursuant to the

contract, O'Bryan removed and replaced damaged and rotted structural wood posts, beams, and

other structural components in Rickhouse H during 2017 and 2018 (<u>Id.</u> at PageID # 8).

On November 1, 2018, employees of Terressentia noticed some broken posts and movement of storage racks in Rickhouse H, including in the area that O'Bryan performed work in 2017 and 2018 (Id.).  Terressentia contacted O'Bryan to assess possible fixes for the issues discovered (Id.).  In early 2019, O'Bryan installed temporary bracing in Rickhouse H to address those issues and consulted an engineering company to formulate a plan for a permanent fix (Id.).  In April of 2019, Terressentia removed barrels adjacent to the damaged posts to promote straightening so a complete repair plan could be formulated (Id.).  Shortly after midnight on June 17, 2019, a significant portion of Rickhouse H collapsed during a storm (Id.).  To ensure the safety of its employees and the general public and at the direction of government agencies, Terressentia demolished Rickhouse H (Id.).

At the time of the collapse, Mexcor and Widow Jane had Bourbon Supply and Storage Agreements and warehouse receipts with the Distillery for the aging and storage of bourbon barrels they respectively owned (DN 41 PageID # 141) (citing Widow Jane Holdings, LLC and Mexcor, Inc. v. O'Bryan Contracting and Leasing, Inc., United States District Court, Western District of Kentucky, Owensboro Division, Civil Action No. 4:21-CV-00062, DN 1 PageID # 2).  Their bourbon barrels were stored in Rickhouse H (Id.).  The collapse resulted in the destruction of bourbon barrels stored in Rickhouse H, including those owned by Mexcor and Widow Jane (Id.).

During the relevant time frame, Zurich American Insurance Company ("Zurich") insured Terressentia's personal property, and First Specialty Insurance Corporation ("First") insured Terressentia's property—including Rickhouse H—at 10 Distillery Road facility (DN 1-2 PageID # 7).  After the collapse of Rickhouse H, Terressentia made a claim to Zurich for damage to the bourbon barrels stored at Rickhouse H and a claim to First for damage to Rickhouse H and other

related expenses (Id. at PageID # 9).  Terressentia received payments under the Zurich insurance

policy and the First insurance policy (Id.).

The Mexcor and Widow Jane bourbon barrels in Rickhouse H were insured for loss (DN 41

PageID # 141).  Mexcor and Widow Jane submitted loss claims to their respective insurers after

determining the value of the lost bourbon barrels (Id.) (citing DN 41-1 Exhibit 1, Sworn Statements

in Proof of Loss).  Mexcor claimed a total loss of $671,611.76, and (2) Widow Jane claimed a total

loss of $281,871.19 (Id.) (citing DN 41-1 Exhibit 1).  Mexcor's and Widow Jane's loss claims

were accepted by their respective insurers, and each received payment in full for their claimed

losses (Id.) (citing DN 41-2 Exhibit 2, Insurance payments).  Mexcor received payment on January

29, 2020 (DN 41-2 PageID # 149).  Widow Jane receive payments on January 24, 2020 and June

24, 2020 (Id. at PageID # 150-51).

On June 4, 2020, Zurich and First, as subrogees of Terressentia, filed a civil action in the

Davis County Circuit Court asserting claims of breach of contract and negligence against O'Bryan

(DN 1-2 PageID # 6-11).  On June 26, 2020, O'Bryan removed the lawsuit to this Court (DN 1).

On June 17, 2021, Mexcor and Widow Jane filed a lawsuit against O'Bryan in this Court

(Widow Jane Holdings, LLC and Mexcor, Inc. v. O'Bryan Contracting and Leasing, Inc., United

States District Court, Western District of Kentucky, Owensboro Division, Civil Action No.

4:21-CV-00062, DN 1 PageID # 1).  They each asserted a negligence claim against O'Bryan

related to the work it performed on Rickhouse H (Id. at PageID # 1-5).

On September 17, 2021, in both cases the parties filed a joint motion to consolidate the two

actions into this action and then stay the action pending the parties participation in a settlement

conference on October 4, 2021 (4:20-CV-00103, DN 32 PageID # 114-16; 4:21-CV-00062, DN 12

PageID # 47-49).  In an order entered September 21, 2021, both actions were consolidated for all

purposes, including trial, into this Civil Action (4:20-CV-00103, DN 34 PageID # 119-120; 4:21-CV-00062, DN 13 PageID #52-53).

On October 4, 2021, the undersigned conducted the settlement conference with each of the parties participating (4:20-CV-00103, DN 35 PageID # 121-22).  Zurich and First reached an amicable resolution of their claims against O'Bryan (Id.).  Mexcor and Widow Jane did not reach an amicable resolution of their claims against O'Bryan (Id.).  As their claims continued for further adjudication, the undersigned directed Mexcor, Widow Jane, and O'Bryan to submit an agreed amended scheduling order for the Court's consideration ((Id.).  On October 22, 2012, the remaining parties submitted a proposed agreed amended scheduling order (DN 36).  On October 28, 2021, the agreed amended scheduling order was entered (DN 37).  It included a December 3, 2021 deadline for Mexcor and Widow Jane to file all motions to join additional parties and amend the pleadings (Id. at PageID # 132).

The declaration of John Eric Olson, an attorney at W.E. Cox Claims Group (USA) LLC, indicates he traveled to Kentucky and participated in the October 4, 2021 settlement conference in person as the representative with settlement authority on behalf of Widow Jane and Mexcor (DN 49-1 ¶¶ 3, 12).  He indicates, "After the settlement conference, as part of preparing for the litigation to go forward, I sought to confirm whether there was a loan receipt agreement between Widow Jane and its insurer and between Mexcor and its insurer" (Id. ¶ 16).[1]  As part of confirming whether there were loan receipt agreements in place or not, Mr. Olson "obtained the loss statements that Widow Jane and Mexcor submitted to their insurers to make their loss claims arising from the June 17, 2019 collapse of Rickhouse H" (Id. ¶ 18).  Additionally, Mr. Olson obtained the payment confirmations indicating that Widow Jane's and Mexcor's insurers paid their respective claims as

---

[1] Mr. Olson explains, "Under [a loan] agreement, an insurer will front the claim payment money to the insured, and the insured agrees to repay the insurer if they make a recovery in litigation of their claim damages" (DN 49-1 ¶ 17).

those claims were made in the loss statements" (Id. ¶ 19).  After receiving all the above-mentioned information, Mr. Olson determined there was no loan receipt agreement between Widow Jane and its insurer, and there was not loan receipt agreement between Mexcor and its insurer (Id. ¶ 20). Mr. Olson states, "Based on that determination, and the determination that Widow Jane's and Mexcor's insurers had paid their loss claims arising from the June 17, 2019 collapse of Rickhouse H, it was realized that Widow Jane's and Mexcor's insurers were each a real party in interest in the litigation against [O'Bryan]" (Id. ¶ 21).  Mr. Olson emphasizes the decision—to file the motion to substitute Widow Jane's and Mexcor's insurers as the real parties in interest going forward in the case—was the product of the following determinations made after the October 4, 2021 settlement conference failed: "(1) there was no loan receipt agreement between Widow Jane and its insurer; (2) there was no loan receipt agreement between Mexcor and its insurer; [ ] (3) Widow Jane's insurer had paid its loss claim arising from the June 17, 2019 collapse of Rickhouse H; and (4) Mexcor' s insurer had paid its loss claim arising from the June 17, 2019 collapse of Rickhouse H" (Id. at ¶ 22).

On December 2, 2021, Mexcor and Widow Jane filed their Motion to Substitute Insurers as the Real Plaintiffs in Interest (DN 41) and their Motion for Leave to file Amended Complaint and to Join an Additional Party Defendant (DN 42).

Motion to Substitute and Motion to Amend

Pursuant to Fed. R. Civ. P. 17(a), Mexcor and Widow Jane seek an order substituting the following two insurers into the case going forward as the real plaintiff parties in interest: (1) Plaintiff Certain Underwriters at Lloyd's of London Subscribing to Policy No. UMR:B1230WM01356A18 (in place of Plaintiff Mexcor); and (2) Plaintiff Certain Underwriters at Lloyd's of London Subscribing to Policy No. UMR:BO72CM316800m (in place of Plaintiff

Widow Jane) (collectively Certain Underwriters) (DN 41 PageID # 140-44; DN 41-3 PageID # 152-53).  As grounds for their motion, Mexcor and Widow Jane acknowledge that Rule 17(a) requires the substitution because their insurers have paid the entire losses suffered by them as a result of the Rickhouse H collapse (DN 41 PageID # 142) (citing DN 41-1 PageID # 145-47, Sworn Statements; DN 41-2 PageID # 148-51, Payments; U.S. v. Aetna Cas. & Sur. Co., 338 U.S. 366, 380-81 (1949); Certain Interested Underwriters at Lloyd's, London, England v. Layne, 26 F.3d 39, 42 (6th Cir. 1994)).  Mexcor and Widow Jane assert that good cause exists for their motion because: (1) it was timely filed under the agreed amended scheduling order; (2) it complies with the requirement in Rule 17(a) that the case be pursued in the names of the real parties in interest; (3) O'Bryan will not be prejudiced by the granting of the motion as it is already on notice that Mexcor's and Widow Jane's claims were paid in full by their respective subrogees; and (4) the discovery phase is just beginning in earnest as to these claims against O'Bryan (Id. at PageID # 143).

Pursuant to Fed. R. Civ. P. 15(a)(2), Certain Underwriters move the Court for leave to file amended complaint and join additional party defendant (DN 42 PageID # 154-59; DN 42-1 Proposed Amended Complaint).  Certain Underwriters seek to add subrogation claims against O'Bryan; join as an additional defendant, Green River Distilling Company, LLC, formerly known as TerrePURE Kentucky Distillers, Inc., doing business as O.Z. Tyler Distillery ("Green River"); and assert negligence, breach of contract, and subrogation claims against Green River (DN 42 PageID # 155).  As grounds for said motion, Certain Underwriters asserts: (1) the motion is timely filed under the agreed amended scheduling order; (2) the motion is filed concurrently with the Rule 17(a) motion to substitute; and (3) there is no lack of notice of these claims or any danger of

prejudice as O'Bryan and Green River are well-aware of the litigation and the discovery phase is just beginning in earnest as to the claims (DN 42 PageID # 154-59).

O'Bryan's Response

O'Bryan objects to the motion to substitute because approximately six months after Mexcor and Widow Jane initiated their litigation, and approaching two years from Mexcor's receipt of insurance proceeds and eighteen months from Widow Jane's receipt of insurance proceeds, Mexcor and Widow Jane moved to substitute Certain Underwriters as the appropriate real party in interest (DN 45 PageID # 310) (citing DN 41-2 PageID # 149, 150-51).[2]  O'Bryan asserts that no excusable nor understandable mistake occurred in the filing of the complaint in the name of Mexcor and Widow Jane, because the insurers knew they were the real parties in interest for more than a year before the complaint was filed (DN 45 PageID # 306, 311-12) (citing Zurich Ins. Co. v. Logitrans, Inc., 297 F.3d 528, 532 (6th Cir. 2002)).   O'Bryan suggests that the circumstances here are akin to those in Zurich Ins. Co. and Factory Mut. Ins. Co. v. Derby Indus., LLC, No. 3:17-CV-00198-JHM, 2018 WL 4390745, at *3-4 (W.D. Ky. Sept. 14, 2018), where substitution under Rule 17(a) was found not permissible because the determination of the right party to bring suit was not difficult and no excusable mistake had been made (Id. at PageID # 313-14).[3]

O'Bryan objects generally to the amended complaint in the name of Certain Underwriters, for the same reason it opposes the motion to substitute, but does not object to the amended complaint insofar as it seeks to join Green River as a defendant, as Green River's participation is

---

[2] O'Bryan claims on August 25, 2021, opposing counsel first advised that Mexcor and Widow Jane's claims were more appropriately identified as subrogation claims on behalf of their insurers, Certain Underwriters (DN 45 PageID # 308) (citing DN 45-3 PageID # 337, email).

[3] O'Bryan points out that it has separately filed a Motion to Dismiss (DN 45 PageID # 306-07, n.1) (citing DN 44).

necessary for purposes of apportionment of fault (Id. at PageID # 307, 314).  O'Bryan argues the motion of leave to amend should be denied as futile to the extent the amended complaint seeks to assert new claims against O'Bryan, brought by new plaintiffs, after the applicable two-year statute of limitations for property damage claims expired on June 17, 2021, because Rule 15(c)(1)(C) does not permit relation back of new causes of action asserted by new plaintiffs (Id. at PageID # 307, 314-17) (citing Rule 15(a); KRS 413.125; New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003)).  Alternatively, O'Bryan argues if Certain Underwriters are treated as Plaintiffs for purposes of relation back, the new causes of action do not arise out of the "'conduct, transaction, or occurrence set out . . . in the original pleading' because the causes of action asserted by Certain Underwriters could not have been asserted by the original Plaintiffs" and O'Bryan could not have been put on notice of these additional causes of action (Id. at PageID # 315-17) (citing Rule 15(c)(1)(B); Williams v. United States, 405 F.2d 234, 236 (5th Cir. 1968) (notice is the critical element in the determination)).  O'Bryan suggests this is not properly classified as an amendment so much as it is a distinct and separate suit (Id. at PageID # 307).

## Reply

In reply, Mexcor and Widow Jane rely on Mr. Olson's declaration to argue their motion to substitute under Rule 17(a)(3) is intended to avoid forfeiture and injustice due to an understandable mistake that occurred when the Complaint was filed in their names instead of Certain Underwriters (DN 49 PageID # 357-66) (citing DN 49-1 PageID # 372-75; Factory Mut. Ins. Co. v. Derby Indus., LLC, No. 3:17-CV-00198-JHM, 2018 WL 4390745, at 3 (W.D. Ky. Sept. 14, 2018)). Mexcor and Widow Jane believe it would be a great forfeiture and injustice if the insurers were now precluded from substituting into the shoes of the current Plaintiff's, as the rightful real parties

in interest to pursue legitimate damages claims against O'Bryan, especially given that Rule 17 requires the action be prosecuted in the name of the real party in interest, and it specifically allows for the real party in interest to be substituted into the action so the action may proceed as if it had been originally commenced by the real party in interest (DN 49 PageID # 357-66).[4]   Mexcor and Widow Jane assert that O'Bryan's reliance on two cases—Zurich Ins. Co. v. Logitrans, Inc., 297 F.3d 528 (6th Cir. 2002) and Factory Mut. Ins. Co., 2018 WL 4390745—is misguided because they are factually distinguishable from the circumstances before the Court (Id. at PageID # 363-66).   Mexcor and Widow Jane explain—in contrast with the first case where Zurich Insurance Company had no claims against the defendants and the defendant raised the issue on the eve of trial—Certain Underwriters has claims against O'Bryan because Certain Underwriters paid Mexcor and Widow Jane's losses caused by O'Bryan, and once they discovered the reasonable mistake, they timely filed the motion to substitute (Id. at 363-65) (citing Zurich Ins. Co., 297 F.3d at 530, 532).   Mexcor and Widow Jane point out—in contrast with the second case where GE's assignment of its right to pursue the $6 million deductible occurred after the statute of limitations expired—this is a straightforward substitution situation where they asserted the damage claims before the statute of limitations expired and Certain Underwriters is merely stepping into their shoes (Id. at 365-66) (citing Factory Mut. Ins. Co., 2018 WL 4390745, at *1, 4).

Mexcor and Widow Jane explain that the motion for leave to amend is proper under Rule 15(c) because Certain Underwriters' negligence and subrogation claims in the amended complaint are based on O'Bryan's repairs to Rickhouse H and its subsequent collapse, the same conduct and occurrence that Mexcor's and Widow Jane's negligence claim is based on sought (Id. at 366-68)

---

[4] Mexcor and Widow Jane point out that O'Bryan has failed to bring O.Z. Tyler into the case for apportionment purposes despite having known that O.Z. Tyler, the owner responsible for Rickhouse H, is a proper indispensable party to O'Bryan's defense of the case (DN 49 PageID # 359).

(citing Williams v. U.S., 405 F.2d 234, 236-37 (5th Cir. 1968)).  Further, the amount in damages that Certain Underwriters seek is the same as the amount in damages that Mexcor and Widow Jane sought in the original complaint (Id.).  To the extent O'Bryan argues Rule 15(c) does not allow for changing of plaintiffs in the proposed amended complaint, Mexcor and Widow Jane point out that the motion for leave was brought in conjunction with a motion to substitute under Rule 17(a) (Id. at PageID # 368).  Mexcor and Widow Jane assert the motion for leave should be granted because: (1) it was timely filed under the agreed amended scheduling order; (2) Certain Underwriters' claims against O'Bryan and Green River relate back to and arise out of the same conduct and occurrence as the allegations in Mexcor's and Widow Jane's complaint; (3) no party will be prejudiced by the granting of the motion for leave before discovery begins in earnest; and (4) the motion for leave is brought in good faith and will not cause any undue delay to the case and is not futile (Id. at PageID # 368-69).

## Discussion

### A

Federal Rule of Civil Procedure 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest."  "Under the Rule, the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law. . . .  The real party in interest analysis turns upon whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief."  Certain Interested Underwriters at Lloyd's, London, England v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994) (citations omitted).  As this is a diversity action, Kentucky provides the governing substantive law for determining the real party in interest.  Id. (citation omitted); Zachry Indus., Inc. v. Siemens Energy, Inc., No. 3:18-CV-579, 2021 WL 3576696, at *4 (W.D. Ky. Aug. 12, 2021) (citation omitted).

Additionally, Rule 17(a) provides:

> (3) ***Joinder of the Real Party in Interest***.  The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.   After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).  The advisory committee notes provide the following guidance:

> ***The provision*** that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution, etc., is ***added simply in the interests of justice***.  In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name.  That having been accomplished, ***the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover***, and to insure generally that the judgment will have its proper effect as re judicata.
>
> This provision keeps pace with the law as it is actually developing. ***Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed***--in both maritime and nonmaritime cases.  See *Levinson v. Deupree*, 345 U.S. 648 (1953); *Link Aviation, Inc. v. Downs*, 325 F.2d 613 (D.C. Cir. 1963).  ***The provision should not be misunderstood or distorted.  It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made***.  It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period.  It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitation period.  ***It is, in cases of this sort, intended to insure***

> *against forfeiture and injustice--in short, to codify in broad terms*
> *the salutary principle of Levinson v. Deupree, 345 U.S. 648 (1953),*
> **and** *Link Aviation, Inc. v. Downs, 325 F.2d 613 (D.C. Cir. 1963).*

Fed. R. Civ. P. 17, 1966 Advisory Committee Note (emphasis added).  In sum, while the plaintiff's vigilance is a consideration under Rule 17(a), the lack of prejudice to the defendant should also be considered in evaluating a Rule 17(a) motion, because the Rule is "intended to insure against forfeiture and injustice." Id.

Generally, courts have recognized that Rule 17(a)(3) is crafted to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should have been brought. *See* Gardner v. State Farm Fire and Cas. Co., 544 F.3d 553, 562 (3d Cir. 2008) (quoting Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure*, § 1555 (2d ed. 2008)); Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997); United States ex rel. Wulff v. CMA, Inc., 890 F.2d 1070, 1075 (9th Cir.1989).  As the Second Circuit explained, "There plainly should be no dismissal where 'substitution of the real party in interest is necessary to avoid injustice[.]'" Advanced Magnetics, Inc., 106 F.3d at 20 (citations omitted).  A correction in parties is permitted under Rule 17(a)(3), even after the statute of limitations governing the action has expired, to allow the substitution to relate back to the date of the original complaint. *See* Auday v. Wet Seal Retail, Inc., 698 F.3d 902, 905 (6th Cir. 2012) (citing Fed. Civ. P. 15(c); Fed. R. Civ. P. 17, 1966 Advisory Comm. Note (explaining that Rule 17's provision for substituting the real party in interest is "relevant" to whether a new plaintiff can relate back)); Link Aviation, Inc. v. Downs, 325 F.2d 613, 614-15 (D.C. Cir. 1963).  In sum, "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." Advanced Magnetics, Inc., 106 F.3d at 20 (citations omitted).

12

Mexcor and Widow Jane argue that Rule 17(a) requires substitution because their insurers paid the entire losses suffered by them as a result of the Rickhouse H collapse on June 17, 2019 (DN 41 PageID # 142) (citing DN 41-1 PageID # 145-47, Sworn Statements; DN 41-2 PageID # 148-51, Payments).   Specifically, Certain Underwriters paid Mexcor on January 29, 2020 (DN 41-2 PageID # 149) and Certain Underwriters paid Widow Jane on January 24, 2020 and June 24, 2020 (Id. at PageID # 150-51).   Under Kentucky law, "[t]he general rule is that upon payment of a loss, the insurer is subrogated pro tanto to any right of action which the insured may have against a third person whose negligence or tortuous act caused the loss."   Ohio Cas. Ins. Co. v. Vermeer Mfg. Co., 298 F. Supp. 2d 575, 579 (W.D. Ky. 2004).   Thus, Certain Underwriters—as subrogees of Mexcor and Widow Jane—are the real parties in interest in this lawsuit suit against O'Bryan.

Mexcor and Widow Jane are, however, the parties who filed the lawsuit against O'Bryan (Widow Jane Holdings, LLC and Mexcor, Inc. v. O'Bryan Contracting and Leasing, Inc., United States District Court, Western District of Kentucky, Owensboro Division, Civil Action No. 4:21-CV-00062, DN 1 PageID # 1).   And they did so on June 17, 2021 (Id.), which O'Bryan indicates was the last day the claims concerning injury to personal property could be brought under the governing two-year statute of limitations in KRS 413.125 (DN 45 PageID 315-16).

Mr. Olson's declaration is helpful in addressing the question of whether an understandable mistake has been made in selecting the parties in whose name the action should have been brought. After an unsuccessful settlement conference on October 4, 2021, as part of preparing for the litigation to go forward, Mr. Olson sought to confirm whether there was a loan receipt agreement between Mexcor and its insurer and between Widow Jane and its insurer (DN 49-1 ¶ 16).   Mr. Olson explains, "Under such an agreement, an insurer will front the claim payment money to the

insured, and the insured agrees to repay the insurer if they make a recovery in litigation of their claim damages" (Id. ¶ 17). Kentucky law defines a loan receipt agreement as "a legal fiction by which insurance companies are permitted to file a subrogation action in the name of their insured, in order to prevent the company from being prejudiced at a trial of the subrogation action should the jury become aware that the real party in interest is an insurance company." North Metcalfe Volunteer Fire Dept., Inc. v. Reberland Equipment, Inc., No. 1:09-CV-00131-TBR, 2010 WL 59189, at *2 (W.D. Ky. Jan. 5, 2010) (quoting Todd v. Ratcliffe, 603 S.W.2d 925, 928 (Ky. Ct. App. 1980). Under Kentucky law, when there is a loan receipt agreement, "the insured remains the real party in interest because the insurer avoids subrogation." Id. (citing Aetna Freight Lines, Inc. v. R.C. Tway Co., Inc., 298 S.W.2d 293, 296 (Ky. 1956); State Farm Mutual Auto. Ins. Co. v. Hall, 165 S.W.2d 838, 840 (Ky. 1942)). Thus, if there were loan receipt agreements in place, Mexcor and Widow Jane would be the real parties in interest in this lawsuit suit against O'Bryan.

As part of confirming whether there were loan receipt agreements in place, Mr. Olson obtained the loss statements Mexcor and Widow Jane submitted to their insurers, and the payment confirmations indicating Mexcor's and Widow Jane's "insurers paid their respective claims as those claims were made on the loss statements" (Id. ¶¶ 18-19). Equally important, after receiving all the information, Mr. Olson determined there was no loan receipt agreement between Mexcor and its insurer, and there was no loan receipt agreement between Widow Jane and its insurer (Id. ¶ 20). "Based on that determination, and the determination that Widow Jane's and Mexcor's insurers had paid their loss claims arising from the June 17, 2019 collapse of Rickhouse H, [Mr. Olson] realized that Widow Jane's and Mexcor's insurers were each a real party in interest in the litigation against [O'Bryan]" (Id. ¶ 21).

Essentially, Mr. Olson's declaration indicates as a result of his recent efforts to confirm the existence of loan receipt agreements between the insureds and the insurers, he discovered that a mistake had been made in selecting the parties in whose names the action should have been brought. Considering the evidence in the record and the arguments of the parties, the undersigned concludes an understandable mistake was made in ascertaining the real parties in interest. As explained above, Rule 17(a)(3) is crafted to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should have been brought. *See* Gardner v. State Farm Fire and Cas. Co., 544 F.3d 553, 562 (3d Cir. 2008).

While Mexcor's and Widow Jane's vigilance is a consideration under Rule 17(a), the lack of prejudice to O'Bryan should also be considered in evaluating a Rule 17(a) motion, because the Rule is "intended to insure against forfeiture and injustice." Fed. R. Civ. P. 17, 1966 Advisory Comm. Note. Though the Certain Underwriters, as subrogees of Mexcor's and Widow Jane's damage claims, will suffer forfeiture and an injustice if they are precluded from substituting into the shoes of the current Plaintiffs and pursuing the damage claims; O'Bryan will not suffer a forfeiture or an injustice if the substitution occurs because Certain Underwriters, as subrogees, will be stepping into Mexcor's and Widow Jane's shoes to pursue the very damage claims asserted in the complaint. Additionally, Mexcor and Widow Jane filed their motion to substitute less than six months after filing the law lawsuit against O'Bryan. Further, discovery is just beginning in earnest, and O'Bryan has moved the Court for leave to file a third-party complaint against Green River (DN 48). Considering the circumstances, this is an instance where a Rule 17(a) substitution of plaintiffs should be liberally allowed because the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants. See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997).

The 1966 Advisory Committee Note mentions that the Rule seeks to embody "in broad terms the salutary principle" in <u>Link Aviation, Inc. v. Downs</u>, 325 F.2d 613 (D.C. Cir. 1963). Fed. R. Civ. P. 17, 1966 Advisory Comm. Note.  In that case, the Circuit Court sought to avoid an injustice by construing the suit as having been filed by the insureds for the use of the insurers who had become subrogated to the rights of the insureds after paying their property damage claims in full.  <u>Link Aviation, Inc.</u>, 325 F.2d at 614-15.  The D.C. Circuit held that a Rule 17 substitution of the insurers for those originally named as plaintiffs did not set forth a new cause of action which would be time barred under the governing statute of limitations.  <u>Id.</u>  The Circuit Court concluded that the motion to substitute should have been granted and, therefore, reversed the trial court's ruling and remanded the case.  <u>Id.</u> at 615.  The circumstances here are similar to those in <u>Link Aviation, Inc.</u> because an understandable mistake has been made in selecting the party in whose name the action should have been brought and a Rule 17(a)(3) substitution of the Plaintiffs will avoid forfeiture and injustice.  Further, as in <u>Link Aviation, Inc.</u>, the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.

O'Bryan's reliance on <u>Zurich Ins. Co. v. Logitrans, Inc.</u>, 297 F.3d 528 (6th Cir. 2002) is misplaced because the circumstances in that case are distinguishable from those before the Court. American Guarantee paid its insured's claims for damages and became the insured's subrogee regarding any claims the insured had against the defendants from the fire.  <u>Id.</u> at 530.  Despite its legal entitlement, American Guarantee was not named a party to the initial complaint filed on November 6, 1998.  <u>Id.</u>  Instead, Zurich brought the action as the insured's subrogee, notwithstanding it's never having issued an insurance policy nor paid out any money to the insured. <u>Id.</u>  On the eve of trial, a defendant moved to dismiss the action under Rule 12(b)(6) because Zurich was not a real party interest.  <u>Id.</u>  The trial court granted the motion.  <u>Id.</u>  As the statute of limitations

had run on American Guarantee's claims, the denial of the motion to substitute prevented it from pursuing its claims against the defendants.  Id.

The Sixth Circuit, in affirming the trial court's decision, noted that the circumstances of the case were analogous to the last example illustrated in the Advisory Committee's Notes to Rule 17.  Id. at 532.  The Sixth Circuit explained, "An attorney made a mistake and filed the action in the name of Zurich Switzerland, when Zurich Switzerland had no claims whatsoever against the defendants, and no Article III standing to sue.  American Guarantee, a totally separate entity, which was not vigilant in protecting its claims, cannot now benefit from Zurich Switzerland's mistake so as to take advantage of the suspension of the limitations period."  Id. at 532.  Here, by contrast, there has been an understandable mistake in ascertaining whether the action should have been brought in the names of Mexcor and Widow Jane, or Certain Underwriters as subrogees of Mexcor and Widow Jane.  Further, Certain Underwriters appear to have been vigilant in protecting their claims.  And the change effected by the substitution is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.

O'Bryan's reliance on Factory Mut. Ins. Co. v. Derby Indus.,LLC, No. 3:17-CV-00198-JHM, 2018 WL 4390745 (W.D. Ky. Sept. 14, 2018) is equally unavailing because the circumstances in that case are distinguishable from those before the Court.  Factory Mutual Insurance Company (Factory Mutual), as subrogee of General Electric Company (GE), brought an $140 million action which included a claim for the $6 million deductible paid by GE.  Id. at *1-2. The district court granted the motion to dismiss the $6 million deductible claim because Factory Mutual could not maintain the claim, as the subrogee to GE, as it never actually paid that amount. Id.  After the governing statute of limitations expired on the $6 million deductible claim, GE assigned it to Factory Mutual.  Id.  Factory Mutual then raised the time barred claim in an amended

complaint, arguing under Rule 15(c)(1)(B) and Rule 17(a)(3) the claim related back to the filing of the original complaint.  Id.  The court concluded Rule 15(c)(1)(B) and Rule 17(a)(3) could not be used to relate the time barred $6 million deductible claim back to the filing of the original complaint because assignment of the claim and the filing of the amended complaint occurred after the statute of limitations expired.  Id. at *3-4.  Clearly, the factual circumstances in Factory Mut. Ins. Co. are unlike the situation that prompted Mexcor and Widow Jane to file their motion to substitute.

Considering the circumstances and the applicable law, the undersigned concludes there has been an understandable mistake in ascertaining whether the action should have been brought in the names of Mexcor and Widow Jane, or Certain Underwriters as subrogees of Mexcor and Widow Jane.  Further, for the reasons set forth above, denial of the motion to substitute under Rule 17(a)(1) would result in an injustice.  Under Rule 17, once a party has been substituted, "the action proceeds as if it had been originally commenced by the real party in interest."  Fed. R. Civ. P. 17(a)(3).  "Thus, a correction in parties is permitted even after the statute of limitations governing the action has run."  6A Charles A. Wright & Arthur R. Miller, Fed. Prac. and Proc., § 1555 (3d ed. 2020).  For the foregoing reasons, substitution of Certain Underwriters for Mexcor and Widow Jane as the Plaintiffs is appropriate under Rule 17(a)(3) and it will relate back to the date of the original complaint. *See* Auday v. Wet Seal Retail, Inc., 698 F.3d 902, 905 (6th Cir. 2012) (citations omitted); Link Aviation, Inc. v. Downs, 325 F.2d 613, 614-15 (D.C. Cir. 1963).

B

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint shall be freely granted "when justice so requires."  In assessing the interests of justice, the Court should consider several factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the

moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Coe v. Bell, 161 F.3d 320, 341 (6th Cir. 1998) (quoting Brooks v. Celeste, 39 F.3d 125, 130 (6th Cir. 1994)); *see also* Colvin v. Caruso, 605 F.3d 282, 294 (6th Cir. 2010) ("A motion to amend a complaint should be denied if the amendment is sought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.").  In the Sixth Circuit, leave to amend a pleading may be denied on grounds of futility only if the amended pleading could not withstand a Rule 12(b)(6) motion to dismiss.  *See* Demings v. Nationwide Life Ins. Co., 593 F.3d 486, 490 (6th Cir. 2010); Kottmyer v. Maas, 436 F.3d 684, 691-692 (6th Cir. 2006); Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000).

Where the allegations in a complaint affirmatively show that the claim is time barred, dismissal under Rule 12(b)(6) is appropriate.  Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012).  To determine if the complaint is time-barred, and therefore a futility, the Court must resolve the questions of whether the amended complaint relates-back to the date of the original complaint under Rule 15(c) or whether the amended complaint is otherwise filed within the applicable statute of limitation.

As mentioned above, O'Bryan argues the motion of leave to amend should be denied as futile to the extent the amended complaint seeks to assert new claims against O'Bryan, brought by new plaintiffs, after the applicable two-year statute of limitations for property damage claims in KRS 413.125 expired on June 17, 2021, because Rule 15(c)(1)(C) does not permit relation back of new causes of action asserted by new plaintiffs.  O'Bryan's reliance on Rule 15(c)(1)(C) is misplaced.  In the preceding section, the undersigned ruled substitution of Certain Underwriters for Mexcor and Widow Jane as the Plaintiffs is appropriate under Rule 17(a)(3) and it will relate

back to the date of the original complaint.  This means the action proceeds as if it had been originally commenced by Certain Underwriters.  For this reason, Certain Underwriters are not new Plaintiffs as O'Bryan suggests and Rule 15(c)(1)(C) does not apply.

Alternatively, O'Bryan relies on Rule 15(c)(1)(B) to argue the motion should be denied because Mexcor and Widow Jane could not have asserted the new causes of action that Certain Underwriters proposes to assert, and O'Bryan could not have been put on notice of these additional causes of action.  Under Fed. R. Civ. P. Rule 15(c)(1)(B), relation back is permitted when an amended pleading "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  "Rule 15(c) is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence."  Hall v. Spencer Cty. Ky., 583 F.3d 930, 934 (6th Cir. 2009) (citations omitted) (cleaned up).  "In short, a court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence."  Id. (citation omitted) (cleaned up).  "When applying this standard to the facts of a given case, we give meaning to those terms not by generic or ideal notions of what constitutes a conduct, transaction, or occurrence, but instead by asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading."  Id. (citations omitted) (cleaned up).  This standard is usually satisfied "if there is an identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong."  Miller v. Am. Heavy Lift Shipping, 231 F.3d 242, 250 (6th Cir. 2000).  "The Rule also must be interpreted

20

in light of the fundamental tenor of the Rules, which is one of liberality rather than technicality." Hall, 583 F.3d at 934 (citation omitted) (cleaned up).

In the original complaint, Mexcor and Widow Jane assert a negligence claim against O'Bryan arising out of the collapse of Rickhouse H and they seek compensatory damages for the complete loss of stock and loss of revenue from sales related to the stock (Widow Jane Holdings, LLC and Mexcor, Inc. v. O'Bryan Contracting and Leasing, Inc., United States District Court, Western District of Kentucky, Owensboro Division, Civil Action No. 4:21-CV-00062, DN 1 PageID # 1-4). The proposed amended complaint asserts the negligence claim plus subrogation claims against O'Bryan, but it seeks the same amount in damages (DN 42-1 PageID # 168-173). The original complaint and the proposed amended complaint are based on the same nexus of facts as the original complaint as they both allege claims based on O'Bryan's work on Rickhouse H and its subsequent collapse; the proposed amended complaint simply asserts the new legal theories—subrogation of Mexcor's and Widow Jane's to Certain Underwriters—based on this occurrence. While it may be a close call as to whether O'Bryan had adequate notice of the nature and scope of the allegations in the proposed amended complaint, O'Bryan has not been prejudiced in its defense of claims arising out of the collapse of Rickhouse H and the amount in damages has not changed. Accordingly, the claims in the proposed amended complaint satisfy the requirements for relation back and are thus not barred by the two-year statute of limitations in KRS 413.125 that apply to such property damage claims.

As mentioned above, O'Bryan but does not object to the proposed amended complaint insofar as it seeks to join Green River as a defendant, as Green River's participation is necessary for purposes of apportionment of fault.

## **ORDER**

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Substitute Insurers as the Real Plaintiffs in Interest (DN 41) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Amended Complaint and to Join Additional Party Defendant (DN 42) is **GRANTED**.

February 9, 2022

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies to:      Counsel of Record